UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PHILLIP T. STEWART, | ) | |
| Plaintiff, | ) | C.A. No. 08-0009(EGS) |
| v. | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| Defendants. | ) | |

**DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS**

Defendant District of Columbia (the "District"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12, respectfully requests that this Court dismiss it from the above-captioned matter. As explained more fully in the accompanying Memorandum of Points and Authorities, the District should be dismissed from this action because (1) the acts giving rise to the incident forming the basis of the Complaint were the intentional tortuous acts of an off-duty employee acting for personal reasons outside the scope of her employment; (2) the public duty doctrine bars Plaintiff's negligence claim against the District; (3) Plaintiff has failed to state a claim under the District of Columbia Human Rights Act; and (4) Plaintiff has failed to state a claim for municipal liability pursuant to *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978).

Because this Motion is dispositive in nature, the requirements of LCvR 7(m) do not apply.

Respectfully submitted,

PETER J. NICKLES

Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


__/s/  Nicole L. Lynch_____
NICOLE L. LYNCH (471953)
Chief, Section II


____/s/  Shana L. Frost_____
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
shana.frost@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHILLIP T. STEWART, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 08-0009(EGS) |
| v. | ) ) ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS**

Defendant District of Columbia (the "District"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12, respectfully requests that this Court dismiss it from the above-captioned matter. As explained more fully herein, Plaintiff has failed to state a claim against the District because (1) the actions giving rise to the incident in the Complaint were the intentional tortuous acts of an off-duty employee acting for personal reasons outside the scope of her employment with the District; (2) the public duty doctrine bars Plaintiff's negligence claim against the District; (3) Plaintiff has failed to state a cognizable claim under the District of Columbia Human Rights Act; and (4) Plaintiff has failed to state a claim for municipal liability for alleged violation of constitutional rights pursuant to *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978).

### I.     FACTUAL BACKGROUND

On November 10, 2007, Plaintiff was working as a security guard at an establishment called the Avenue Club when he noticed two women who were behaving

in a disorderly manner approaching the nightclub. Compl. ¶¶ 13-16. "Plaintiff informed the women that he could not allow either to enter the club as their actions made Plaintiff believe the women to be intoxicated." Compl. ¶ 17. One of these women was Defendant Talkia Moore, who was an off-duty officer with the Metropolitan Police Department and was assigned to the Seventh District.[1]

Plaintiff alleges that Defendant Moore began to curse at Plaintiff, telling him that she was not drunk, that she was "the motherfucking police," and that Plaintiff was not going to stop her from going into the club. Compl. ¶ 18. Plaintiff further alleges that "Defendant Moore then pulled her badge out and again stated that she was going to gain admission and Plaintiff was not going to stop her." *Id.* Plaintiff states that Defendant Moore spit on him. Compl. ¶ 20. At this point, Plaintiff claims that he "flagged down an officer" and informed the officer that he "was assaulted by a woman claiming to be a police officer." Compl. ¶ 21. Plaintiff asserts that this officer told him that "Defendant Moore was an officer and that he was not going to make out a complaint against another officer," and then informed Plaintiff that he should call 911. Compl. ¶¶ 22-23.

Plaintiff asserts that at this juncture "Defendant Moore attempted to call her sergeant," while Plaintiff was placing a 911 call. Compl. ¶ 27. Plaintiff alleges that a sergeant arrived at the scene and "escorted Defendant Moore to the car and told Defendant Moore's girlfriend to leave the scene." Compl. ¶ 28. Additionally, apparently as a result of Plaintiff's 911 call, another sergeant was sent to and arrived at the scene. Compl. ¶¶ 30-32.

---

[1] On information and belief, the Avenue Club is located in the 600 block of New York Avenue, NW, which borders the Metropolitan Police Department's First and Third Districts, and not in the Seventh District.

2

Plaintiff alleges that he voiced concerns to one of the sergeants regarding "how the situation was being handled and informed that sergeant that he would pursue a resolution on his own as he had a videotape of the altercation." Compl. ¶ 36. The sergeant asked to view the videotape and Plaintiff showed it to the sergeant. Plaintiff claims that the "sergeant acknowledged that he could see Defendant Moore showing her badge and can [sic] see her acting disorderly and lunging forward." Compl. ¶ 38. Plaintiff asserts that after the sergeant saw the videotape, "Defendant Moore was called back to the scene" and that both sergeants spoke to her. Compl. ¶ 40.

Plaintiff alleges that one of the sergeants spoke to the watch commander and advised Plaintiff that Defendant Moore would not be arrested and that Plaintiff would be contacted at a later time. Compl. ¶ 41. Plaintiff asserts that Defendant Moore then "began to confront Plaintiff," and was told by one of the sergeants to stop yelling at the Plaintiff, but Defendant Moore did not comply. Compl. ¶¶ 44-45. Plaintiff alleges that a few officers on the scene tried to get Defendant Moore to calm down, but Defendant Moore refused and told one of the officers to "get off of her." Compl. ¶¶ 46-48. Plaintiff avers that Defendant Moore was then handcuffed and arrested. Compl. ¶ 49. Plaintiff states that he "has been informed by the U.S. Attorney's Office for the District of Columbia that Defendant Moore was criminally charged with Assault of Plaintiff." Compl. ¶ 53.

Plaintiff asserts claims of assault and battery against Defendant Moore only, denial of civil rights pursuant to 42 U.S.C. § 1983 and violation of the District of Columbia Human Rights Act against all defendants, and negligence against the District

3

of Columbia.[2]  Although this matter was filed on January 3, 2008, service on the Mayor was not effectuated until April 8, 2008.

## II.      STANDARD OF REVIEW

For many years, the standard of review in determining the sufficiency of a complaint when faced with a motion to dismiss was that set forth by the Supreme Court in *Conley v. Gibson*: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  355 U.S. 41, 45-46 (1957).  In the recent Supreme Court case of *Bell Atlantic Corp. v. Twombley,* 127 S. Ct. 1955 (2007), however, the Court re-examined *Conley*, observing that "*Conley's* 'no set of facts' language has been questioned, criticized, and explained away long enough."  *Bell Atlantic*, 127 S. Ct. at 1969.  The Court concluded that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Id.* (citations omitted).

The Supreme Court in *Bell Atlantic* stated that a statement of grounds on which a complaint rests "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 1965.  Rather, the Court now imposes a "plausibility" standard when judging the sufficiency of a complaint in the face

---

[2] Plaintiff's Complaint is confusing in that Count V is duplicative of Count I, Count VI is essentially duplicative of Count III, and Count VII is essentially duplicative of Count IV.  Thus, although eight claims are asserted, there are, in actuality, only five claims in this matter:  assault, battery, negligence, violation of civil rights pursuant to 42 U.S.C. § 1983, and violation of the Human Rights Act.

4

of a motion to dismiss. *Id.* In reviewing Plaintiff's Complaint, it is clear that Plaintiff cannot pass the plausibility standard as the facts that he has alleged, construed in Plaintiff's favor, fail to demonstrate liability for the District.

### III.   ARGUMENT

#### A.   The District Cannot Be Held Liable for Defendant Moore's Conduct As Defendant Moore Was Off-Duty and Acting Outside the Scope of Her Employment

It is well-settled that an employer can be held liable under a theory of *respondeat superior* for the tort of one of its employees only when the employee is acting within the scope of his or her employment. *Weinberg v. Johnson*, 518 A. 2d 985, 988 (D.C. 1986) (*Johnson II*). Scope of employment questions are governed by the law of the place where the employment relationship exists. *Williams v. United States,* 350 U.S. 857 (1955); *Majano v. United States*, 469 F.3d 138, 141 (D.C. Cir. 2006); *Hoston v. Silbert,* 681 F.2d 876 (D.C. Cir. 1982). Thus, in order to resolve the scope of employment question presented in this case, this Court must look to the law of the District of Columbia.

The District of Columbia has adopted the definition of scope of employment in § 228 of the Restatement (Second) of Agency (1957). *Moseley v. Second New St. Paul Baptist Church,* 534 A.2d 346, 348 n.4 (D.C. 1987); *accord District of Columbia v. Coron,* 515 A.2d 435, 437 (D.C. 1986); *Weinberg v. Johnson*, 434 A.2d 404, 408 (D.C. 1981) (*Johnson I*). That section of the Restatement provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is of the kind he is employed to perform;
>> (b) it occurs substantially within the authorized time and space limits;
>> (c) it is actuated, at least in part, by a purpose to serve the master, and,

5

>   (d) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228.

Thus, under District of Columbia law, an employer will not be held liable for the intentional tort of its employees when the conduct is solely in furtherance of the employee's personal interest and not that of the employer. *Johnson I*, at 408. "An act is not within the scope of employment if done for the employee's purpose only; unless the tort occurred at least in part as a result of a desire to serve the employer, the employer is not liable." *District of Columbia v. Davis,* 386 A.2d 1195, 1203 (D.C. 1978). In addition, the tortuous act "must be of the same general nature as that authorized, or incidental to the conduct authorized." *Id.*, citing *Presley v. Commercial Credit Corp.*, 177 A.2d 916, 918 (D.C. 1962).

Plaintiff cannot meet the Restatement scope-of-employment factors. First, Plaintiff cannot demonstrate that Defendant Moore's actions were of the type she was employed to perform. "To qualify as conduct of the kind he was employed to perform, the [employee's] actions must have either been 'of the same general nature as that authorized' or '*incidental* to the conduct authorized.'" *Haddon v. United States,* 68 F.3d 1420, 1424 (D.C. Cir. 1995) (emphasis in original), quoting Restatement § 229. Plaintiff cannot dispute that officers of the Metropolitan Police Department are not authorized to spit on or threaten individuals in order to gain access to a bar while intoxicated and off-duty.

6

Conduct is "incidental" to an employee's job duties if it is foreseeable. *Johnson II,* 518 A.2d at 990. As our Circuit has noted, "[f]oreseeable in this context does not carry the same meaning as it does in negligence cases; rather, it requires the court to determine whether it is fair to charge employers with responsibility for the intentional torts of their employees." *Haddon,* 68 F.3d at 1424, citing *Penn Central Transp. Co. v. Reddick,* 398 A.2d 27, 39-40 (D.C. 1979). Thus, the conduct must be "a direct outgrowth of the employee's instructions or job assignment" to be foreseeable, and the fact that an employee's job provides an opportunity to commit the tort is not enough to impose liability on the employer for the employee's actions. *Boykin v. District of Columbia,* 484 A.2d 560, 562, 563 (D.C. 1984), quoting *Penn Central*, 398 A.2d at 32.

In *Haddon*, the D.C. Circuit reviewed a number of D.C. Court of Appeals decisions relating to the "direct outgrowth" question and concluded that an intentional assault falls within the scope of employment if it was connected to a "job-related controversy." *Haddon*, 68 F.3d at 1424-25. The *Johnson I* case was among those the Court reviewed. In that case, the plaintiff brought suit against a laundromat owner after being shot in the face by a laundromat employee. *Johnson I,* 518 A.2d at 986. The employee had been hired to take dry clothes out of the machines, and he and the plaintiff were initially involved in a verbal dispute over the location of the plaintiff's shirts. The plaintiff had given up on the argument and turned to leave. When he turned back, the employee shot him in the face. Despite this unprovoked behavior, the D.C. Court of Appeals held that the employee's intentional shooting of the plaintiff was within the scope of his employment, because his dispute with the plaintiff had arisen out of his job duties, writing:

7

> As the law has evolved, the intent or purpose criterion has become broad enough to embrace an intentional tort arising out of any dispute that "was originally taken on the employer's behalf." Instead, "the present trend is to extend liability for intentional torts to situations where the employer provides a 'peculiar opportunity and ... incentive for such loss of temper, ... as where an argument is likely by virtue of the servant's duties, and the conduct is wholly or partially in furtherance of the master's business.

*Id.* at 991.

Another case reviewed by the *Haddon* Court was *Penn Central Transportation Co. v. Reddick*, 398 A.2d 27 (D.C. 1979), where the court held that a railroad employee was not acting within the scope of his employment when he kicked a taxicab driver while traveling between work sites. On this set of facts, the court concluded that the employee's action "was neither a direct outgrowth of [his] instructions or job assignment, nor an integral part of the employer's business activity," noting that "nothing in the business of running a railroad . . . makes it likely that an assault will occur between a railroad brakeman and a taxicab driver over the celerity with which the latter will provide a taxicab ride to the former." *Id*. at 32; *see also Boykin*, 484 A.2d at 564 (teacher was not acting within scope of employment when he sexually assaulted student because teacher was not then performing teaching responsibilities).

In light of this precedent, the *Haddon* Court similarly held that a White House electrician was not acting within the scope of his employment when he threatened the White House chef with physical harm. *Haddon,* 68 F.3d at 1424. The Court noted that the electrician's "alleged tort did not arise directly out of his instructions or job assignment as a White House electrician" because "[u]nlike the ... shooting in *Johnson*, the electrician's threat did not stem from a dispute over the performance of his work." *Id*.

8

Similarly, the facts that Plaintiff has pled do not demonstrate that Defendant Moore's alleged assault on Plaintiff was the "outgrowth of a job related controversy" but was "personal in nature" and in furtherance of only Defendant Moore's personal interests and not the interests of the District. As Plaintiff alleges, Defendant Moore was attempting to use any police authority she had to gain admission to a nightclub. Compl. ¶ 18. The District did not authorize Defendant Moore to use her police powers to allow her to enter a nightclub while off-duty and intoxicated, nor were the District's interests in any way furthered by Defendant Moore's actions of spitting on and threatening Plaintiff.

Moreover, the relationship between Defendant Moore and Plaintiff did not originate as a result of Defendant Moore performing her police duties but rather from Defendant Moore attempting to further her own interests by going to a nightclub when she was not working. It is clear from Plaintiff's Complaint that Defendant Moore had no intent to serve her employer by attending the nightclub. Indeed it was the fact that Plaintiff's conduct – his refusal to allow Defendant Moore into the nightclub – affected Defendant Moore personally, that Defendant Moore confronted the Plaintiff.

Additionally, Defendant Moore's actions were not actuated by a purpose to serve the District because her actions were in direct violation of orders given to her by on-duty police officers and officials. Plaintiff avers that a "sergeant ordered Defendant Moore to stop yelling at Plaintiff, but Defendant Moore would not stop." Compl. ¶ 45. Plaintiff states that "[a]nother male officer approached and stated, 'I'm ordering you to step to the side . . .I'm ordering you to stand down,'" and that the "Defendant Moore was told to stand down again, but refused." Compl. ¶¶ 46-47. Plaintiff further alleges that "[a]nother female officer approached and told Defendant Moore that they needed her to

9

calm down [and] Defendant Moore responded by telling the female officer to get off of her." Compl. ¶ 48. Finally, Plaintiff states that Defendant Moore was handcuffed arrested as she refused to follow the orders of the on-duty officers and officials. Compl. ¶ 49. Indeed, not only was Defendant Moore not acting to serve the District, she was defying direct orders of her employer.

As alleged by Plaintiff, Defendant Moore's actions on November 10, 2007 were contrary to Title 6A, DCMR, Chapter 2, § 200.5 which provides: "Member of the force shall promptly obey any order emanating from a superior officer." As Defendant Moore consciously chose to ignore District regulations, her actions were personal in nature and not actuated by a purpose to serve her employer. Defendant Moore's actions, therefore, are analogous to those of the off-duty police officer in *District of Columbia v. Coron* who beat plaintiff after plaintiff kicked the wheel of the officer's vehicle. 515 A.2d 435 (D.C. 1986) Plaintiff sued the District of Columbia and the police officer for intentional torts. The jury returned a verdict in favor of plaintiff based solely upon the principles of *respondeat superior* liability. On appeal, plaintiff argued that because District regulations state that police officers are always on duty, the District is liable for the intentional torts committed by one of its employees. The Court rejected this argument, explaining:

> We do not, however, interpret such regulation as imposing liability on an employer for the intentional torts of its employee where the employee's conduct was motivated solely by personal reasons. To apply such regulations to a dryly logical extreme, as appellee argues, would impose liability on the District regardless of the nature of an officer's conduct. This we are unprepared to do.

10

*Id*. 438.  In sum, the facts as pled in the light most favorable to Plaintiff demonstrate that the District cannot be liable for an allegedly intoxicated off-duty police officer's assault on a nightclub doorman who refused to let the officer into the nightclub.

### B.  Plaintiff's Negligence Claim Is Barred by the Public Duty Doctrine

It is well-settled in the District of Columbia that the "government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen." *Warren v. District of Columbia,* 444 A.2d 1, 4 (D.C. 1981).  This policy is based on the notion that "individuals, juries and courts are ill-equipped to judge 'considered legislative-executive decisions' as to how particular community resources should be or should have been allocated to protect individual members of the public." *Morgan v. District of Columbia,* 468 A.2d 1306, 1311 (D.C. 1983) (en banc) quoting *Riss v. City of New York,* 22 N.Y.2d 579, 240 N.E.2d 860, 293 N.Y.S.2d 897 (1968).  As the *Morgan* Court observed:

> Severe depletion of these resources could well result if every oversight, omission or blunder made by a police official rendered a state or municipality potentially liable in compensatory, let alone punitive damages.  In effect, police officials would be placed in the position of insuring the personal safety of every member of the community, notwithstanding limited resources and the inescapable choices of allocation that must be made.  Moreover, police officials who act and react in the milieu of criminal activity where every decision to deploy law enforcement personnel is fraught with uncertainty must have broad discretion to proceed without fear of civil liability in the unflinching discharge of their duties.

*Morgan,* 468 A.2d at 1311 (internal citations and quotations omitted).  Thus, absent a "special relationship" between an individual and the police, no liability may lie for an alleged failure to act.

11

"District of Columbia courts have made clear … that the threshold for establishing a special relationship is very high." *Trifax Corp. v. District of Columbia*, 53 F. Supp. 2d 20, 30 (D.D.C. 1999). The D.C. Court of Appeals has held that, to show a special duty owed by the District to a plaintiff, the plaintiff must "allege and prove two things: (1) a direct or continuing contact between [the plaintiff] and a governmental agency or official, and (2) a justifiable reliance on the part of [the plaintiff]." *Taylor v. District of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001) (quoting *Klahr v. District of Columbia*, 576 A.2d 718, 720 (D.C. 1990)).

With respect to the first prong, a special relationship is not created simply because an individual requests police assistance, or "when the police gratuitously promise to provide protection." *Id.* at 1313. Rather, there must be affirmative action on the part of the police to protect or act for a specific individual or class of persons.

The second element, justifiable reliance by the Plaintiff, similarly carries a high burden. As the *Morgan* Court noted:

> Justifiable reliance, in this context, means particular or special reliance. The definition could not be otherwise. In a civilized society, every citizen at least tacitly relies upon the constable for protection from crime. Hence, more than general reliance is needed to require the police to act on behalf of a particular individual. The plaintiff must specifically act, or refrain from acting, in such a way as to exhibit particular reliance upon the actions of the police in providing personal protection.

*Id.* at 1315 (citations omitted).

In this case, Plaintiff alleges that "Defendants [sic] had a duty to use reasonable care to avoid allowing the second assault of Plaintiff to occur." Compl. ¶ 92. Plaintiff claims that "Defendant was put on notice as to the violent tendencies of Defendant Moore when they [sic] were informed of the first assault on Plaintiff and further shown the

12

videotape of the first assault and battery on Plaintiff." Compl. ¶ 93. Plaintiff admits that Defendant Moore was arrested on the scene but appears to be arguing that the arrest did not occur quickly enough. Plaintiff has not alleged that the officers on the scene affirmatively acted to create a special relationship with the Plaintiff. Plaintiff simply alleges that he complained to the police about Defendant Moore and that the officers on the scene did not take timely action even though Plaintiff admits they began to interview the involved witnesses once they were on the scene. There is no allegation that the police created an ongoing, continuous contact with Plaintiff or that the police in any way acted to specifically protect the Plaintiff.

There is also no allegation of Plaintiff's justifiable reliance of any perceived police protection. Here, Plaintiff's reliance on the police is no greater than that of any other citizen making a complaint to the police. In short, there is no evidence of a special relationship sufficient to overcome the well-settled general rule that the police owe no particular duty to a citizen beyond the overall duty owed to the public at large, and thus Plaintiff's negligence claim must be dismissed pursuant to the public duty doctrine.

### C. Plaintiff Has Failed to State a Claim Against the District Under the District of Columbia Human Rights Act

Plaintiff has alleged that the District has somehow violated the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq*. Compl. ¶¶ 68-73, 85-90. As demonstrated below, Plaintiff has failed to state any cognizable claim under the DCHRA.

The stated purpose of the DCHRA is to:

secure an end in the District of Columbia to discrimination for any reason
other than that of individual merit, including, but not limited to,
discrimination by reason of race, color, religion, national origin, sex, age,

13

>marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, matriculation, political affiliation, genetic information, disability, source of income, status as a victim of an intrafamily offense, and place of residence or business.

D.C. Code § 2-1401.01. The DCHRA sets forth specific provisions prohibiting acts of discrimination in employment (§ 2-1402.11 – § 2-1402.13); housing and commercial spaces (§ 2-1402.21 - § 2-1402.24); public accommodations (§ 2-1402.31); educational institutions (§ 2-1402.41 - § 2-1402.42); as well as other miscellaneous and prohibited practices (§ 2-1402.61 - § 2-1402.73).

Plaintiff specifically cites to the general provision of § 2-1402.01, which states that:

>Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service, and in housing and commercial space accommodations.

D.C. Code § 2-1402.01.

Plaintiff has not pled any facts to establish that he has a plausible claim under the DCHRA. Plaintiff has not alleged that he was a member of any particular protected class, that he suffered any discrimination on the basis of any of the factors set forth in D.C. Code § 2-1401.01, or that he was denied the ability "to participate fully in the economic, cultural and intellectual life of the District." D.C. Code § 2-1402.01.

Plaintiff essentially seeks a judicial broadening of the DCHRA way beyond any of the Act's stated intentions to enable him to apply the Act to his particular complaint. Such efforts have expressly been rejected by both the D.C. Court of Appeals and the D.C. Circuit. *See Gersman v. Group Health Ass'n,* 931 F.2d 1565, 1574 (D.C. Cir. 1991)

14

(noting that "the District of Columbia courts have declined to extend their interpretation of [a previous version] of the statute outside the scope of the enumerated protected activities) (vacated and remanded on other grounds by 502 U.S. 1068 (1992)); *see also Sorrells v. Garfinkel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 289 (D.C. 1989) ("The [DCHRA] is a carefully crafted statute with very broad coverage . . . Insofar as [appellant's] concerns are unprotected by the Act, that is the result of the way the Act is written. We cannot rewrite it or extend its coverage beyond the limits set by the legislature."). Accordingly, Plaintiff's claim under the DCHRA must be dismissed.

### D. Plaintiff Has Failed to State a Claim Under 42 U.S.C. § 1983 Against the District of Columbia

Plaintiff first alleges that "Defendants deprived Plaintiff of his civil rights and utilized excessive force against Plaintiff. Said deprivation was the result of Defendant's custom and/or policy, which was the moving force behind said deprivation." Compl. ¶ 61. Plaintiff then states that, "[i]n refusing to take action against Defendant Moore and treating Plaintiff as if he had broken the law, Defendants caused Plaintiff to be denied his rights secured by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 United States Code Section 1983." Compl. ¶¶ 64, 81. Plaintiff further alleges that "Defendant Moore was the servant, agent, and employee of her codefendant, the District of Columbia, so that his [sic] acts are imputed to the District of Columbia." Compl. ¶ 66, 83.

In attempting to state a claim for municipal liability against the District, Plaintiff's allegations as set forth above are deficient in numerous ways. First, it is very well-settled that the Fourteenth Amendment does not apply to the District of Columbia. The Due Process Clause of the Fourteenth Amendment states, in pertinent part, "No State shall . . .

15

deprive any person of life, liberty, or property without due process of law . . . ." "Thus, by its terms, the Fourteenth Amendment applies only to the States; it does not apply to the Federal Government or the District of Columbia." *Powers-Bunce v. District of Columbia,* 479 F. Supp. 2d 146, 153 (D.D.C. 2007), citing *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987); *see also Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) (holding that the Fourteenth Amendment does not apply to the District of Columbia).

Second, 42 U.S.C. § 1983 does not in and of itself create any "rights" that can be violated; rather, it is merely the vehicle to redress the alleged violation of rights created by other federal laws. *See Albright v. Oliver,* 510 U.S. 266, 271 (1994); *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).

Third, the notion that an employee's acts can impute liability on the municipality was long ago rejected by the United States Supreme Court. *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978); *see also Triplett v. District of Columbia,* 108 F.3d 1450, 1453 (D.C. Cir. 1997). Rather:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983."

*Monell,* 436 U.S. at 694.

Fourth, the facts alleged by Plaintiff are inconsistent and do not support a finding of a constitutional violation by the municipality. To state such a claim, Plaintiff must allege conduct committed by a person acting under color of state law which deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United

16

States.³  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Plaintiff's burden is significant; he must plead that "*deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights."  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monnell*, 436 U.S. at 694; emphasis in original).  "A showing of simple or even heightened negligence will not suffice" to establish municipal liability for constitutional torts.  *Brown*, 520 U.S. at 407.  Moreover, without a showing of "an existing unconstitutional municipal policy . . . attributed to a municipal policymaker," "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985).

Here, Plaintiff alleges that "Defendants . . . utilized excessive force against Plaintiff," and that this "was the result of Defendant's custom or policy, which was the moving force behind said deprivation."  Compl. ¶ 61.  The only physical contact that Plaintiff has alleged is the allegation that Defendant Moore spit on him.  Plaintiff does not claim that any of the on-duty officers used any force against him.  Not only are the personal actions of an off-duty employee not performed "under color of state law," Plaintiff cannot seriously contend that Defendant Moore's act of spitting upon Plaintiff was pursuant to some custom or policy of the District of Columbia.

To the extent that Plaintiff claims that the failure of the officers to take action against Defendant Moore was pursuant to some official custom or policy of the District, this contention is belied by Plaintiff's own factual recitation, where he states that the officers directly ordered Defendant Moore to leave the Plaintiff alone, and that Defendant

---

³ Further, as discussed in Section A, Defendant Moore's actions were personal in nature and not in the scope of her employment with MPD.  As such, there is no government action "under color of state law" which would make Section 1983 applicable to this incident.

17

Moore was handcuffed, arrested, and is being prosecuted for assaulting Plaintiff. Compl. ¶¶ 45-49, 53. Thus, Plaintiff has no choice but to concede that the officers took appropriate action against Defendant Moore. Put simply, Plaintiff has not alleged any facts to state a claim against the District of Columbia for the alleged violation of his constitutional rights.

## IV.    CONCLUSION

For the reasons set forth above, the District respectfully requests that this matter be dismissed against it.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

   /s/  Nicole L. Lynch
NICOLE L. LYNCH (471953)
Chief, Section II

   /s/  Shana L. Frost
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
shana.frost@dc.gov