**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PHILLIP T. STEWART,** | |
| **Plaintiff,** | **C.A. No. 08-0009(EGS)** |
| **v.** | |
| **DISTRICT OF COLUMBIA, *et al.*,** | |
| **Defendants.** | |

**REPLY MEMORANDUM TO DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS AMENDED COMPLAINT**

On April 28, 2008, the District of Columbia ("District") filed a Motion to Dismiss Plaintiff's Complaint, asserting that (1) the acts giving rise to the incident forming the basis of the Complaint were the intentional tortious acts of an off-duty employee acting for personal reasons outside the scope of her employment; (2) the public-duty doctrine bars Plaintiff's negligence claim against the District; (3) Plaintiff has failed to state a claim under the District of Columbia Human Rights Act; and (4) Plaintiff has failed to state a claim for municipal liability under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). After receiving additional time to respond to the District's dispositive motion, Plaintiff filed an Amended Complaint on May 19, 2008. On May 20, 2008, this Court ordered that, in light of Plaintiff's Amended Complaint, the District file a Reply to its original dispositive motion.

This case arises from Plaintiff's attempt to hold the District liable for (1) the actions of an allegedly intoxicated, off-duty police officer at a nightclub, and (2) the alleged inaction of other members of the Metropolitan Police Department ("MPD). As

explained herein, Plaintiff's Amended Complaint adds only a series of conclusory terms of art to the original complaint but does nothing to correct the defects of that complaint. Because Plaintiff still fails to state a claim against the District, the District should be dismissed from the case.

## I. The District Cannot Be Liable for Defendant Moore's Actions As Defendant Moore Was Acting Outside the Scope of Her Employment

As explained in the District's opening brief, the District can only be held vicariously liable for acts of an employee that are performed within the scope of that individual's employment. *See* Mem. in Supp. of Mot. to Dismiss at 5-8. Generally, "[a]n act is not within the scope of employment if done for the employee's purpose only; unless the tort occurred at least in part as a result of a desire to serve the employer, the employer is not liable." *District of Columbia v. Davis,* 386 A.2d 1195, 1203 (D.C. 1978). In addition, the tortious act "must be of the same general nature as that authorized, or incidental to the conduct authorized." *Id.* (citing *Presley v. Commercial Credit Corp.*, 177 A.2d 916, 918 (D.C. 1962)).

Plaintiff has now attempted to force Defendant Moore's conduct into the scope-of-employment realm by adding the allegations that "Defendant Moore's actions were job related as her actions occurred after she had identified herself a member of MPD," Am. Compl. ¶ 79, and that Defendant Moore had cursed, lunged and spit on Plaintiff "after she identified herself as a police officer and invoked her police powers." Am. Compl. ¶ 55. These allegations are not sufficient to bring Defendant Moore's off-duty conduct within the scope of her employment.

The new allegations do not change the fact that Defendant Moore's actions (as alleged) were carried out for her purposes only. She did not identify herself to stop a

fight or arrest an individual. Instead, according to Plaintiff, she identified herself as a police officer to get into a nightclub over the resistance of nightclub security, who were not allowing her in because she was intoxicated. Am. Compl. ¶ 17. Her method of "identifying" herself as a police officer was to yell, "I am the motherfucking police . . . I'm getting into this motherfucker . . . you not going to stop me." Am. Compl. ¶ 18.

It is clear from the allegations in Plaintiff's Amended Complaint that Defendant Moore was not trying to gain access to a nightclub to serve the District of Columbia, and no purpose to serve the District can possibly be gleaned from the facts of Plaintiff's Amended Complaint. Moreover, Defendant Moore's conduct was not at all authorized by the District. There is no allegation – nor could there reasonably be an allegation - that officers of the Metropolitan Police Department are permitted to use their badges, spit on, curse at, or threaten individuals in order to gain access to a bar while intoxicated and off-duty. Indeed, Defendant Moore was ordered to "stand down" by another officer and arrested for her actions. Am. Compl. ¶¶ 46-47, 49.

In this case, Defendant Moore's actions are analogous to those of the off-duty police officers in *District of Columbia v. Coron*, 515 A.2d 435 (D.C. 1986), who also identified themselves as police officers in support of purely personal aims. In that case, two off-duty officers on their way to a bar beat the plaintiff severely after the plaintiff kicked the wheel of the car of one of the officers. *Id.* at 436-437. After repeatedly punching the plaintiff in the stomach and the face, one of the officers stated, "who the hell do you think you are, kicking my car. I'm a policeman." *Id.* at 437. The officers than both displayed their badges, and the other officer told Plaintiff, "we both have guns and we know how to use them." *Id.* Plaintiff sued the District of Columbia and the

police officer for intentional torts. The jury returned a verdict in favor of plaintiff based solely upon the principles of *respondeat superior* liability. On appeal, in addition to rejecting the notion that liability should be imputed to the District simply because police officers were, by regulation, always deemed to be on duty, *id.* at 438, the Court also noted that it was:

> of particular importance that at no time was [the officer's] conduct in furtherance of the District's interest. [The officer] was dressed in civilian clothing and driving his own automobile on a purely personal venture at the time of the incident. Moreover, from the moment [the officer] stopped his automobile he did not handle the situation in a manner expected of a police officer. [The officer's] entire behavior during this incident reflected that of an individual bent on personal vengeance for a perceived personal affront.

*Id.* at 438.

Similarly, Defendant Moore's conduct was also in furtherance of her own, and not the District's, interests. She was off-duty and out on a purely personal venture at the time of the incident, just as the officers were in *Coron*. Further, as in *Coron*, Defendant Moore also did not handle herself within the guidelines of the Metropolitan Police Department. In sum, the allegations of Plaintiff's Amended Complaint, when viewed in his favor, do not state a claim of vicarious liability against the District.

### II. Plaintiff Cannot State a Claim Against the District Based Upon the Actions of the Non-Defendant MPD Officers

Plaintiff raises claims against the District that arise out of the purported failure of non-Defendant officers on the scene to protect Plaintiff from an alleged "second assault." That "second assault" was an alleged verbal tirade directed against Plaintiff by Defendant Moore, during which Plaintiff admits that the officers warned Defendant Moore to stop yelling at Plaintiff, told her to "stand down" more than once, and arrested Defendant

Moore. Am. Compl. ¶¶ 44-49. From this asserted failure to act, Plaintiff asserts that the District is liable for negligent supervision, violation of the District of Columbia Human Rights Act, and a constitutional violation arising from an alleged custom, policy, and practice. As discussed previously and *infra*, with or without the new allegations in the Amended Complaint, these claims fail as a matter of law.

**A. The Public Duty Doctrine Bars Plaintiff's Negligence Claims Against the District**

As explained in the District's Memorandum in Support of its Motion to Dismiss at 11-13, claims that a particular governmental service was not provided to a specific individual are generally barred by the public duty doctrine. *See, e.g., Warren v. District of Columbia*, 444 A.2d 1 (D.C. 1981) (en banc).[1] In the latest version of his Complaint, Plaintiff makes the following allegation:

> There was a direct and continuing contact between the Plaintiff and the police sergeant an [sic] other officers who came to the scene after Defendant Moore's first assault on Plaintiff and Plaintiff justifiably relied on the sergeant and other offers [sic] on the scene to protect Plaintiff from further assaults from Defendant Moore as they had been placed on notice of Defendant Moore's assault on Plaintiff. The sergeant had been specifically sent to the seen [sic] to protect plaintiff and investigate the assault because of the Plaintiff's 911 call advising that Defendant Moore had assaulted him. The Defendant' [sic] sent a sergeant and other officers to the scene as affirmative action on the part of police to protect Plaintiff from further assaults from Defendant Moore. The police created an ongoing, continuous contact with Plaintiff prior to the second assault on Plaintiff by Defendant Moore. Plaintiff relied on the actions of the police to provide personal protection from further assaults by Defendant Moore. The officers on the scene affirmatively acted to create a special relationship with the Plaintiff. The police officers [sic] conduct were [sic] committed by person [sic] acting under color of state law which deprived Plaintiff of his rights, privileges and immunities secured by the Constitution of the united [sic] States. The deliberate actions of the police

[1] Indeed, the District is also immune from liability under the discretionary immunity doctrine which provides immunity to the District and its employees if the acts complained of are discretionary (as opposed to ministerial) in nature. *Powell v. District of Columbia*, 602 A.2d 1123 (D.C. 1992).

> are attributed to the District of Columbia as its customs and practices are the moving force behind Plaintiff's deprivation of federal rights.

Am. Comp. ¶ 53. Plaintiff also contends that the District "failed to train the officers involved and failed to supervisee [sic] them." Am. Compl. ¶ 94. Despite Plaintiff's repeated use of the various terms of art, the actual facts pled by Plaintiff are not sufficient to overcome the public duty doctrine as Plaintiff's facts cannot, as a matter of law, create a special relationship for two reasons: (1) the mere act of seeking police protection does not overcome the public duty doctrine, and (2) Plaintiff's own allegations establish that the officers took steps to protect Plaintiff, Plaintiff was never physically assaulted once the other officers were on the scene (only yelled at), and the officers ultimately arrested Defendant Moore.

Plaintiff's action in seeking police protection cannot in and of itself establish a special relationship. "[T]he mere fact that an individual has emerged from the general public and become an object of the special attention of public employees does not create a relationship which imposes a special legal duty." *Hines v. District of Columbia,* 580 A.2d 133, 136 (D.C. 1990); *see also Powell v. District of Columbia,* 602 A.2d 1123, 1130-31 (D.C. 1992) ("mere contacts are insufficient in the absence of evidence of a special duty arising as a result.").

Specifically, it is well-settled that Plaintiff's 911 call is insufficient to establish a special relationship. *Wanzer v. District of Columbia,* 580 A.2d 127, 132 (D.C. 1990) (citing *Morgan,* 468 A.2d at 1313). The call and the alleged response to the call led to the police responding to the scene, just as the police would in response to any person's call for service. *See Wanzer,* 580 A.2d at 132 (describing 911 call as "no different from the hundreds of other calls received every day by the EMS. [The caller] neither asked

for, nor would he in all likelihood have received, a response different in any way from the response generally made to such requests, *i.e.*, the dispatch of an ambulance."). Indeed, "[e]ven a series of contacts over a period of time between a public agency and an injured or endangered person is not enough to establish a special relationship, absent some showing that the agency assumed a greater duty to that person than the duty owed to the public at large. *Wanzer*, 580 A.2d at 132 (citing *Morgan,* 468 A.2d at 1316). Plaintiff has alleged no facts from which such a higher duty or "special relationship" could be inferred.

If anything, Plaintiff's alleged contact with police during a call for service is far less greater than that in *Warren,* where no special relationship was found. In that case, two women in a rooming house called the police for assistance in connection with a burglary in progress on a lower floor of the building. *Warren*, 444 A.2d at 2. While the caller was assured that the police were on their way, the dispatcher categorized the code as a lower priority and did not broadcast the incident as a crime as in progress. *Id.* Although four squad cars responded, the officers all soon left the scene when no one responded to their knock on the door. *Id.* Hearing their neighbor's continued cries for help, the women again called 911 and were again assured that help was on its way. *Id.* This time, the dispatcher coded the call as an "investigate the trouble" and did not dispatch it to officers. *Id.* The women, believing that officers may have come into the building, called out reassurances to the neighbor. *Id.* The intruders were then alerted to the presence of the other two women and took them captive as well and held all three for fourteen hours, during which time they were the victims of a series of violent sexual assaults. *Id.* On these facts, the court concluded that notwithstanding the calls to 911 and

the assurances by the dispatcher, there was no special relationship between the victims and the police. *Id.* at 4.

Although Plaintiff claims (as did the Plaintiffs in *Warren*) that he justifiably relied on the presence of the police officers, Plaintiff has not pled facts that support a reasonable inference that there was a special duty to the Plaintiff. *See Hines,* 580 A.2d at139 ("without a special duty there can be no justifiable reliance."). If the failure to prevent multiple sexual assaults over a period of hours when the police have been notified does not overcome the public-duty doctrine, then a brief alleged failure to prevent one individual from yelling at another does not. Indeed, Plaintiff's claim is a textbook example of the importance of the public-duty doctrine and the havoc that would ensue if the public could use lawsuits to micromanage the way the District's officers have performed their duty to the public. Accordingly, Plaintiff's Amended Complaint still fails to allege facts sufficient to overcome the public duty doctrine and therefore fails to state a claim of liability against the District of Columbia.

**B. Plaintiff Fails to State a Claim Under the District of Columbia Human Rights Act**

Plaintiff attempts to state a claim under the District of Columbia Human Rights Act ("DCHRA") with the following allegations:

> Plaintiff is a member of a protected class because of his source of income (night club security). Plaintiff suffered discrimination as he was treated differently by Defendants than individuals outside his protected class. As a result of Defendants' actions Plaintiff was denied the ability to participate fully in the economic, cultural and intellectual life of the District of Columbia and to have an equal opportunity to participate in all aspects of life and denied the ability to enjoy equal treatment by the District of Columbia employees.

Am. Compl. ¶ 4. Plaintiff also cites generally to D.C. Code § 2-1402.01. Am. Compl. ¶ 68. This section provides as follows:

> Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service, and in housing and commercial space accommodations.

D.C. Code § 2-1402.01.

Generally, to state a claim under the DCHRA, Plaintiff must allege that (1) he is a member of a protected class, (2) that he suffered some kind of adverse treatment or action, and (3) that a causal connection existed between the first and second elements. *See Everson v. Medlantic Healthcare Group*, 414 F. Supp. 2d 77, 82 (D.D.C. 2006) (reciting elements in an age-discrimination context); *Beckwith v. Career Blazers Learning Ctr.*, 946 F. Supp. 1035, 1050 (D.D.C. 1996) (reciting elements within an employment-discrimination context) (citing *Lempres v. CBS Inc.*, 916 F. Supp. 15, 21 (D.D.C. 1996)). This framework is the direct result of the District's adoption and adaptation of the Supreme Court's Title VII analytic framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 11 (D.D.C. 2001) (citing *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997)).

Plaintiff now claims that he is a member of the "source of income" protected class because of his status as a "night club security" employee. Am. Compl. ¶ 4. Even assuming that "night club security" employees could under some circumstances constitute a protected class, Plaintiff has failed to state a claim as he has not pled any facts to show that he sustained adverse treatment as that term is defined in the statute or

that there was any causal connection between the alleged protected class status and the alleged adverse treatment.

To state a claim under the DCHRA Plaintiff must plead that he suffered some adverse treatment by Defendant that is specified in the Act. *See Everson,* 414 F. Supp. 2d at 82. Sections 2-1402.11 - § 2.1402.42 and § 2-1402.61 - § 2-1402.73 provide an extensive list of acts that, if pled, would satisfy this requirement. D.C. Code § 1402.11 *et seq*. Plaintiff has pled none of these, and instead cites to the general prohibitions of § 2-1402.01, Am. Compl. ¶¶ 66-67, 83-84. Consequently, Plaintiff's claim must be dismissed for this reason alone. *See Gersman v. Group Health Ass'n,* 931 F.2d 1565, 1574 (D.C. Cir. 1991) (noting that "the District of Columbia courts have declined to extend their interpretation of [a previous version] of the statute outside the scope of the enumerated protected activities) (vacated and remanded on other grounds by 502 U.S. 1068 (1992)).

The closest Plaintiff approaches to pleading the second element of a DCHRA claim is his assertion that Defendant failed in a duty it owed to Plaintiff when it "refus[ed] to take action against Defendant Moore and treat[ed] Plaintiff as if he had broken the law." Am. Compl. ¶ 88. As an initial matter, Plaintiff immediately contradicts this general and conclusory assertion by his own specific factual statements where he states multiple officers intervened, including one who ordered Defendant Moore to stand down and another who handcuffed and arrested her. Am. Compl. ¶¶ 45-49. These acts clearly demonstrate that action was taken against Defendant Moore. Moreover, there are no facts alleged that explain or support Plaintiff's claim that he was treated as if he had broken the law.

Additionally, to state a DCHRA claim Plaintiff must show a causal link between protected class membership and the alleged discrimination. *See Everson*, 414 F. Supp. 2d 77 at 82. The DCHRA at bottom is an anti-discrimination statute. Plaintiff must show that he was treated differently *because of* his source of income. Plaintiff makes no such allegation, even in conclusory fashion, and any such allegation under the facts as alleged would be absurd. Instead, Plaintiff claims only that "Plaintiff suffered discrimination as he was treated differently by Defendants than individuals outside his protected class." Am. Compl. ¶ 4. This is not the same thing; Plaintiff must allege that the adverse treatment resulted from discrimination against him on account of the fact that he earned his income as a night club security officer.[2] Because Plaintiff does not and could not possibly make such an allegation without running afoul of Rule 11 (and because he fails to allege adverse treatment meeting the statutory requirements), this claim cannot survive a motion to dismiss. *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987).

The closest Plaintiff comes to asserting different treatment is his assertion that an officer told him (after an inquiry from Plaintiff on the subject) that he would have been arrested for assault on a police officer if he had retaliated against Defendant Moore physically. Am. Compl. ¶ 36. Plaintiff may be suggesting that he would have been treated adversely and differently than Defendant Moore had he retaliated, but he did not retaliate, and any hypothetical retaliation would not have been at all related to his membership in his protected class. All Plaintiff has done here is assert that an officer informed him he was subject to the laws of the District of Columbia regarding assault on an officer. Any other individual would be subject to those laws as well regardless of

[2] By way of illustration, Plaintiff is not alleging that the District denied him employment or public benefits because he was a night club security employee.

membership in a protected class. Thus, Plaintiff has failed to establish the second and third elements of his discrimination claim, and has established the first only if "night club security" employee is a protected class.

### C. Plaintiff Fails to State a Claim of Municipal Liability for Intentional Torts

New to the allegations set forth by Plaintiff in support of his argument that the District should be liable for purported constitutional violations is the following paragraph in the Amended Complaint:

> Defendants [sic] custom and/or policy caused the deprivation of Plaintiff's civil rights and Defendants' [sic] utilized excessive force against Plaintiff. Defendant Moore had identified herself as a police officer, she had already spit on Plaintiff, other police officers on the seen [sic] had put [sic] on notice about the Defendant's assault on Plaintiff and Plaintiff's fear that Defendant would assault him. Defendant Moore was again allowed by the officers on the seen [sic] to come within inches of Plaintiff Moore's cursing and yelling at Plaintiff which put Plaintiff in reasonable apprehension of imminent bodily injury and was undertaken deliberately and with actual malice by Defendant Moore.

Am. Compl. ¶ 78.

To the extent that Plaintiff still seeks to impose vicarious liability on the District for Defendant Moore's actions, such actions should be squarely rejected in accordance with the teachings of *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Moreover, there are no facts to support a claim that the "Defendants' [sic] utilized excessive force against Plaintiff."

Additionally, while Plaintiff has asserted the buzzwords of "custom and/or policy," he has not defined the custom or policy of the District that he is alleging. As other judges of this Court have noted, the allegation of a custom or policy is the "first element of municipal liability" and it "is not nearly as simple to define as it is to recite."

*Cox v. District of Columbia*, 821 F. Supp. 1, 11 (D.D.C. 1993), *aff'd* 40 F.3d 475 (D.C. Cir. 1994). The *Cox* court further observed that "[t]he first task is, of course, to identify and define the particular policy or custom at issue; only then can the more difficult question of whether such a policy or custom existed be addressed." *Id.* Here, Plaintiff has failed to allege the first element, and thus has not satisfied the notice pleading requirements. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

Moreover, Plaintiff appears to be basing his theory of liability for constitutional violation on this single incident. "Where the policy itself is not unconstitutional, considerably more proof than [a] single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).

Most importantly, to state a Section 1983 claim, Plaintiff must allege that the violation of his constitutional rights were done under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978). "Just because [Defendant Moore] is a police officer does not mean that everything [she] does is state action." *Gritchen v. Collier*, 254 F.3d 807, 812-813 (9th Cir. 2001), citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (actions by officer assaulting and attempting to rob victims were the officer's private actions and were not under color of law); *Pitchell v. Callan*, 13 F.3d 545, 548 (2d. Cir. 1994) (officer's shooting of acquaintance was action outside of the officer's police powers); *Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990) ("Acts committed by a police officer even while on duty and in uniform are not under color of

state law unless they are in some way related to the performance of police duties.") (citation omitted); *Bonsignore v. City of New York,* 683 F.2d 635, 638-39 (2d Cir. 1982) (officer outside the scope of his employment when he shot his wife); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (police chief's assault on citizen at police headquarters was not under color of law); *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975) ("Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983.") (citation omitted). Here, the actions of Defendant Moore cannot form the basis for municipal liability against the District as they were not performed under color of state law.

With respect to the actions of the other officers, to the extent that Plaintiff now seeks to assert municipal liability on a constitutional failure-to-protect theory, the Supreme Court in its seminal ruling in *DeShaney v. Winnebago County Dep't of Social Services*, 479 U.S. 189 (1989), held that a due process violation can arise only from an affirmative act and not a failure to act:

> [N]othing in the language of the Due Process Clause itself requires the State to protect life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee or certain minimal levels of safety and security….
>
> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual….
>
> If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*DeShaney*, 489 U.S. at 195-97 (internal citations omitted). The Circuit Courts, including the District of Columbia Circuit Court, have applied the *DeShaney* teachings in cases alleging a constitutional violation for failure to protect. In *Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001), the D.C. Circuit Court noted that:

> a key requirement for constitutional liability is affirmative conduct by the State to increase or create the danger that results in harm to the individual. No constitutional liability exists where the State actors "had no hand in creating a danger but [simply] 'stood by and did nothing when suspicious circumstances dictated a more active role for them.'" … Absent such affirmative conduct by the State to endanger an individual, courts have rejected liability under a State endangerment concept.

*Butera*, 235 F.3d at 650 (quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993) (quoting *DeShaney*, 489 U.S. at 203)); *see also Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) ("failure to act is not an affirmative act under the state-created danger theory"); *Hernandez v. City of Goshen*, 324 F.3d 535, 539 (7th Cir. 2003) (city not liable for failure to take action, where police department learned that disgruntled employee threatened to do bodily harm to employees at plant and that he had access to guns); *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003) (city not liable for failure to protect plaintiff; "[plaintiff] confuses the inert failure to protect with the proactive creation or exacerbation of danger"). Accordingly, Plaintiff has alleged no basis for a Fifth Amendment claim against the District.

Thus, for the reasons set forth above and in the District's Memorandum in Support of its Motion to Dismiss, Plaintiff's claims against the District should be dismissed.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Samuel C. Kaplan
SAMUEL C. KAPLAN (463350)
Assistant Deputy Attorney General

/s/ Shana L. Frost
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax: (202) 727-3625
shana.frost@dc.gov