**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| PHILLIP T. STEWART, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 08-0009(EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

Defendant District of Columbia (the "District"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12, respectfully requests that this Court dismiss it from the above-captioned matter. As explained more fully in the accompanying Memorandum of Points and Authorities, the District should be dismissed from this action because (1) the acts giving rise to the incident that forms the basis of the Amended Complaint were, if actionable, the intentional tortious acts of an off-duty employee acting for personal reasons outside the scope of her employment; (2) the public duty doctrine bars Plaintiff's negligence claim against the District; (3) Plaintiff has failed to state a claim under the District of Columbia Human Rights Act; and (4) Plaintiff has failed to state a claim for municipal liability pursuant to *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978).

Because this Motion is dispositive in nature, the requirements of LCvR 7(m) do

not apply.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

   /s/  Samuel C. Kaplan
SAMUEL C. KAPLAN (463350)
Assistant Deputy Attorney General

    /s/  Shana L. Frost
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 741-8934
shana.frost@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
**PHILLIP T. STEWART,**                 )
                                        )
                **Plaintiff,**          )        **C.A. No. 08-0009(EGS)**
                                        )
        **v.**                          )
                                        )
**DISTRICT OF COLUMBIA,** *et al.*,     )
                                        )
                **Defendants.**         )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**

Defendant District of Columbia (the "District"), by and through undersigned

counsel and pursuant to Fed. R. Civ. P. 12, respectfully requests that this Court dismiss it

from the above-captioned matter.  As explained more fully herein, Plaintiff has failed to

state a claim against the District because (1) the actions giving rise to the incident that

forms the basis of the Amended Complaint were, if actionable, the intentional tortious

acts of an off-duty employee acting for personal reasons outside the scope of her

employment with the District; (2) the public duty doctrine bars Plaintiff's negligence

claim against the District; (3) Plaintiff has failed to state a cognizable claim under the

District of Columbia Human Rights Act; and (4) Plaintiff has failed to state a claim for

municipal liability for alleged violation of constitutional rights pursuant to *Monell v. New*

*York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978).

## I.    FACTUAL BACKGROUND

According to the facts alleged in the Amended Complaint, on November 10,

2007, Plaintiff was working as a security guard at an establishment called the Avenue

Club when he noticed two women who were behaving in a disorderly manner approaching the nightclub.  Am. Compl. ¶¶ 13-16.  "Plaintiff informed the women that he could not allow either to enter the club as their actions made Plaintiff believe the women to be intoxicated."  Am. Compl. ¶ 17.  One of these women was Defendant Talika Moore, an off-duty officer with the Metropolitan Police Department ("MPD") who was assigned to the Seventh District.[1]

Plaintiff alleges that Defendant Moore began to curse at Plaintiff, telling him that she was not drunk, that she was "the motherfucking police," and that Plaintiff was not going to stop her from going into the club.  Am. Compl. ¶ 18.  Plaintiff further alleges that "Defendant Moore then pulled her badge out and again stated that she was going to gain admission and Plaintiff was not going to stop her."  *Id.*  Plaintiff states that Defendant Moore spit on him.  Am. Compl. ¶ 20.  At this point, Plaintiff claims that he "flagged down an officer" and informed the officer that he "was assaulted by a woman claiming to be a police officer."  Am. Compl. ¶ 21.  Plaintiff asserts that this officer told him that "Defendant Moore was an officer and that he was not going to make out a complaint against another officer," and then informed Plaintiff that he should call 911.  Am. Compl. ¶¶ 22-23.

Plaintiff asserts that at this juncture "Defendant Moore attempted to call her sergeant," while Plaintiff was placing a 911 call.  Am. Compl. ¶ 27.  Plaintiff alleges that a sergeant arrived at the scene and "escorted Defendant Moore to the car and told Defendant Moore's girlfriend to leave the scene."  Am. Compl. ¶ 28.  Additionally,

---

[1] On information and belief, the Avenue Club is located in the 600 block of New York Avenue, NW, which borders the Metropolitan Police Department's First and Third Districts, and not in the Seventh District.  *See* www.avedc.com; *see also http://mpdc.dc.gov/mpdc/cwp/view,a,1239,Q,543336,mpdcNav_GID,1523,.asp* (map of MPD districts).

apparently as a result of Plaintiff's 911 call, another sergeant was sent to and arrived at the scene.  Am. Compl. ¶¶ 30-32.

Plaintiff alleges that he voiced concerns to one of the sergeants regarding "how the situation was being handled and informed that sergeant that he would pursue a resolution on his own as he had a videotape of the altercation."  Am. Compl. ¶ 36. Plaintiff showed the videotape to the sergeant who allegedly "acknowledged that he could see Defendant Moore showing her badge and can [sic] see her acting disorderly and lunging forward."  Am. Compl. ¶ 38.  Plaintiff asserts that after the sergeant saw the videotape, "Defendant Moore was called back to the scene" and that both sergeants spoke to her.  Am. Compl. ¶ 40.

Plaintiff alleges that one of the sergeants spoke to the watch commander and advised Plaintiff that Defendant Moore would not be arrested and that Plaintiff would be contacted at a later time.  Am. Compl. ¶ 41.  Plaintiff asserts that Defendant Moore then "began to confront Plaintiff," and was told by one of the sergeants to stop yelling at the Plaintiff, but Defendant Moore did not comply.  Am. Compl. ¶¶ 44-45.  Plaintiff alleges that a few officers on the scene tried to get Defendant Moore to calm down, but Defendant Moore refused and told one of the officers to "get off of her."  Am. Compl. ¶¶ 46-48.  Plaintiff avers that Defendant Moore was then handcuffed and arrested.  Am. Compl. ¶ 49.

Plaintiff asserts claims of assault and battery against Defendant Moore only, denial of civil rights pursuant to 42 U.S.C. § 1983 and violation of the District of Columbia Human Rights Act against all defendants, and negligence against the District

3

of Columbia.[2]  Although this matter was filed on January 3, 2008, service on the Mayor

was not effectuated until April 8, 2008.

## II.    STANDARD OF REVIEW

In examining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff's

"[f]actual allegations must be enough to raise a right to relief above the speculative level,

on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)."  *Bell Atl. Corp. v. Twombly,* 550 U.S. __, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929

(2007).  While a court "must not make any judgment about the probability of the

plaintiff's success," *Aktieselskabet AF 21 November 2001 v. Fame Jeans, Inc.*, 2008 U.S.

App. LEXIS 9627, * 20 (D.C. Cir. Apr. 29, 2008), bare conclusions of law, or sweeping

and unwarranted averments of fact, will not be deemed admitted for purposes of a motion

under Rule 12(b)(6).  *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (1987).  Indeed, the

court need not accept inferences drawn by Plaintiff if such inferences are unsupported by

the facts set out in the complaint, "[n]or must the court accept legal conclusions cast in

the form of factual allegations."  *Kowal v. MCI Communications* Corp., 16 F.3d 1271,

1276 (D.C. Cir. 1994).

## III.    ARGUMENT

### A.  The District Cannot Be Liable for Defendant Moore's Conduct Because She Was Acting Outside the Scope of Her Employment

It is well-settled that an employer cannot be held liable under a theory of

*respondeat superior* for the tort of one of its employees unless the employee is acting

within the scope of his or her employment.  *Weinberg v. Johnson*, 518 A.2d 985, 988

---

[2] Plaintiff's Complaint is confusing in that Count V is duplicative of Count I, Count VI is essentially duplicative of Count III, and Count VII is essentially duplicative of Count IV.  Thus, although eight claims are asserted, there are, in actuality, only five claims in this matter:  assault, battery, negligence, violation of civil rights pursuant to 42 U.S.C. § 1983, and violation of the Human Rights Act.

(D.C. 1986) (*Johnson II*).  Scope-of-employment questions are governed by the law of the place where the employment relationship exists.  *Majano v. United States*, 469 F.3d 138, 141 (D.C. Cir. 2006); *Hoston v. Silbert,* 681 F.2d 876 (D.C. Cir. 1982).  Thus, in order to resolve the scope-of-employment question presented in this case, this Court must look to the law of the District of Columbia.

The District of Columbia has adopted the definition of scope of employment in § 228 of the Restatement (Second) of Agency (1957).  *Moseley  v. Second New St. Paul Baptist Church,* 534 A.2d 346, 348 n.4 (D.C. 1987); *accord District of Columbia v. Coron,* 515 A.2d 435, 437 (D.C. 1986); *Weinberg v. Johnson*, 434 A.2d 404, 408 (D.C. 1981) (*Johnson I*).   That section of the Restatement provides:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is of the kind he is employed to perform;
>> (b) it occurs substantially within the authorized time and space limits;
>> (c) it is actuated, at least in part, by a purpose to serve the master, and,
>> (d)  if force is intentionally used by the servant against another, the use of force is not unexpected by the master.
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228.

Thus, under District of Columbia law, an employer will not be held liable for the intentional tort of its employees when the conduct is solely in furtherance of the employee's personal interest and not that of the employer.  *Johnson I*, at 408.  "An act is not within the scope of employment if done for the employee's purpose only; unless the tort occurred at least in part as a result of a desire to serve the employer, the employer is

not liable." *District of Columbia v. Davis,* 386 A.2d 1195, 1203 (D.C. 1978). In addition, the tortious act "must be of the same general nature as that authorized, or incidental to the conduct authorized." *Id.* (citing *Presley v. Commercial Credit Corp.*, 177 A.2d 916, 918 (D.C. 1962)).

Plaintiff has not pled facts that establish that Defendant Moore was acting within the scope of her employment. Plaintiff attempts to force Defendant Moore's conduct into the scope-of-employment box via the allegation that "Defendant Moore's actions were job related as her actions occurred after she had identified herself a member of MPD," Am. Compl. ¶ 79, and that Defendant Moore had cursed, lunged and spit on Plaintiff "after she identified herself as a police officer and invoked her police powers." Am. Compl. ¶ 55. These allegations are not sufficient to bring Defendant Moore's off-duty conduct within the scope of her employment. Here, Defendant Moore did not identify herself to stop a fight or arrest an individual. Instead, according to Plaintiff, she identified herself as a police officer to get into a nightclub over the resistance of nightclub security employees, who were denying her entry because she was intoxicated. Am. Compl. ¶ 17. Her method of "identifying" herself as a police officer was to yell, "I am the motherfucking police . . . I'm getting into this motherfucker . . . you not going to stop me." Am. Compl. ¶ 18. Merely identifying oneself as a police officer in the service of purely personal aims does not bring conduct within the scope of an officer's employment. *See District of Columbia v. Coron,* 515 A.2d 435, 438 (D.C. 1986).

Moreover, Defendant Moore's actions also were not within the scope of employment because they were not incidental to her job duties. "To qualify as conduct of the kind he was employed to perform, the [employee's] actions must have either been 'of

the same general nature as that authorized' or '*incidental* to the conduct authorized.'"
*Haddon v. United States,* 68 F.3d 1420, 1424 (D.C. Cir. 1995) (emphasis in original),
(quoting Restatement (Second) of Agency § 229).  Conduct is "incidental" to an
employee's job duties if it is foreseeable.  *Johnson II,* 518 A.2d at 990.  As our Circuit
has noted, "[f]oreseeable in this context does not carry the same meaning as it does in
negligence cases; rather, it requires the court to determine whether it is fair to charge
employers with responsibility for the intentional torts of their employees."  *Haddon,* 68
F.3d at 1424 (citing *Penn Central Transp. Co. v. Reddick,* 398 A.2d 27, 39-40 (D.C.
1979)).  Thus, the conduct must be "a direct outgrowth of the employee's instructions or
job assignment" to be foreseeable, and the fact that an employee's job provides an
opportunity to commit the tort is not enough to impose liability on the employer for the
employee's actions.  *Boykin v. District of Columbia,* 484 A.2d 560, 562, 563 (D.C. 1984)
(quoting *Penn Central*, 398 A.2d at 32); *see also Haddon,* 68 F.3d at 1424 (court found
that a White House electrician that had threatened a White House chef physical harm was
outside the scope of employment because the "alleged tort did not arise directly out of his
instructions or job assignment as a White House electrician.").

    The facts that Plaintiff has pled establish that Defendant Moore's alleged assault
on Plaintiff was not the "outgrowth of a job related controversy," but rather was
"personal in nature" and in furtherance of only Defendant Moore's personal interests and
not the interests of the District.  As Plaintiff alleges, Defendant Moore was attempting to
use any police authority she had to gain admission to a nightclub.  Am. Compl. ¶ 18.  The
District did not authorize Defendant Moore to use her police powers to force entry into a

nightclub while off-duty and intoxicated, nor were the District's interests in any way furthered by Defendant Moore's alleged actions of spitting on and threatening Plaintiff.

Far from being actuated by a purpose to serve the District, Defendant Moore's actions were in direct violation of departmental orders and orders given to her by on-duty police officers and officials.  Title 6A, DCMR, Chapter 2, § 200.5 provides:  "Member of the force shall promptly obey any order emanating from a superior officer."  Here, Plaintiff avers that a "sergeant ordered Defendant Moore to stop yelling at Plaintiff, but Defendant Moore would not stop."  Am. Compl. ¶ 45.  Plaintiff further states that "[a]nother male officer approached and stated, 'I'm ordering you to step to the side . . . I'm ordering you to stand down,'" and that "Defendant Moore was told to stand down again, but refused."  Am. Compl. ¶¶ 46-47.  Plaintiff further alleges that "[a]nother female officer approached and told Defendant Moore that they needed her to calm down [and] Defendant Moore responded by telling the female officer to get off of her."  Am. Compl. ¶ 48.  As a result of Defendant Moore's failure to obey orders of on-duty officers and officials, she was handcuffed arrested.  Am. Compl. ¶ 49.

Defendant Moore's actions were thus in direct violation of her employer's orders and therefore can only be outside the scope of her employment for that reason as well. Her actions are analogous to those of the off-duty police officers in *District of Columbia v. Coron,* 515 A.2d 435 (D.C. 1986), who also identified themselves as police officers in support of purely personal aims.  In that case, two off-duty officers on their way to a bar beat the plaintiff severely after the plaintiff kicked the wheel of the car of one of the officers.  *Id.* at 436-437.  After repeatedly punching the plaintiff in the stomach and the face, one of the officers stated, "who the hell do you think you are, kicking my car.  I'm a

policeman." *Id.* at 437. The officers than both displayed their badges, and the other officer told Plaintiff, "we both have guns and we know how to use them." *Id.* Plaintiff sued the District of Columbia and the police officer for intentional torts. The jury returned a verdict in favor of plaintiff based solely upon the principles of *respondeat superior* liability. On appeal, in addition to rejecting the notion that liability should be imputed to the District simply because police officers were, by regulation, always deemed to be on duty, *id.* at 438, the Court also noted that it was:

> of particular importance that at no time was [the officer's] conduct in furtherance of the District's interest. [The officer] was dressed in civilian clothing and driving his own automobile on a purely personal venture at the time of the incident. Moreover, from the moment [the officer] stopped his automobile he did not handle the situation in a manner expected of a police officer. [The officer's] entire behavior during this incident reflected that of an individual bent on personal vengeance for a perceived personal affront.

*Id.* at 438.

Similarly, Defendant Moore's conduct was also in furtherance of her own, and not the District's, interests. She was off-duty and out on a purely personal venture at the time of the incident, just as the officers were in *Coron*. Further, as in *Coron*, Defendant Moore also did not handle herself within the guidelines of the Metropolitan Police Department. In sum, the allegations of Plaintiff's Amended Complaint, when viewed in his favor, do not state a claim of vicarious liability against the District.

### B. Plaintiff Cannot State a Claim Against the District Based Upon the Actions of the Non-Defendant MPD Officers

Plaintiff raises claims against the District that arise out of the purported failure of non-Defendant officers on the scene to protect Plaintiff from an alleged "second assault." That "second assault" was an alleged verbal tirade directed against Plaintiff by Defendant

Moore, during which Plaintiff admits that the officers warned Defendant Moore to stop yelling at Plaintiff, told her to "stand down" more than once, and arrested Defendant Moore. Am. Compl. ¶¶ 44-49. From this asserted failure to act, Plaintiff asserts that the District is liable for negligent supervision, violation of the District of Columbia Human Rights Act, and a constitutional violation arising from an alleged custom, policy, and practice. As discussed previously and *infra*, with or without the new allegations in the Amended Complaint, these claims fail as a matter of law.

### 1. The Public Duty Doctrine Bars Plaintiff's Negligence Claims Against the District

At bottom, Plaintiff's claim is that the District should compensate him because its police officers did not prevent him from getting yelled at (prior to the arrest of the individual who was yelling at him). The public duty doctrine bars this claim and has barred claims that police failed to protect citizens from harms that are multiple orders of magnitude more serious than the purported injuries that are at issue here.

It is well-settled in the District of Columbia that the "government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen." *Warren v. District of Columbia,* 444 A.2d 1, 4 (D.C. 1981). This policy is based on the notion that "individuals, juries and courts are ill-equipped to judge 'considered legislative-executive decisions' as to how particular community resources should be or should have been allocated to protect individual members of the public." *Morgan v. District of Columbia,* 468 A.2d 1306, 1311 (D.C. 1983) (en banc) (quoting *Riss v. City of New York,* 22 N.Y.2d 579, 240 N.E.2d 860, 293 N.Y.S.2d 897 (1968)). As the *Morgan* Court observed:

> Severe depletion of these resources could well result if every oversight, omission or blunder made by a police official rendered a state or municipality potentially liable in compensatory, let alone punitive damages.  In effect, police officials would be placed in the position of insuring the personal safety of every member of the community, notwithstanding limited resources and the inescapable choices of allocation that must be made.  Moreover, police officials who act and react in the milieu of criminal activity where every decision to deploy law enforcement personnel is fraught with uncertainty must have broad discretion to proceed without fear of civil liability in the unflinching discharge of their duties.

*Morgan,* 468 A.2d at 1311 (internal citations and quotations omitted).  Thus, absent a

"special relationship" between an individual and the police, no liability may lie for an

alleged failure to act.

 "District of Columbia courts have made clear … that the threshold for

establishing a special relationship is very high." *Trifax Corp. v. District of Columbia*, 53

F. Supp. 2d 20, 30 (D.D.C. 1999).  The D.C. Court of Appeals has held that, to show a

special duty owed by the District to a plaintiff, the plaintiff must "allege and prove two

things: (1) a direct or continuing contact between [the plaintiff] and a governmental

agency or official, and (2) a justifiable reliance on the part of [the plaintiff]." *Taylor v.

District of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001) (quoting *Klahr v. District of

Columbia*, 576 A.2d 718, 720 (D.C. 1990)).

With respect to the first prong, a special relationship is not created simply because

an individual requests police assistance, or "when the police gratuitously promise to

provide protection." *Id.* at 1313.  Rather, there must be affirmative action on the part of

the police to protect or act for a specific individual or class of persons.

The second element, justifiable reliance by the Plaintiff, similarly carries a high

burden.  As the *Morgan* Court noted:

Justifiable reliance, in this context, means particular or special reliance. The definition could not be otherwise. In a civilized society, every citizen at least tacitly relies upon the constable for protection from crime. Hence, more than general reliance is needed to require the police to act on behalf of a particular individual. The plaintiff must specifically act, or refrain from acting, in such a way as to exhibit particular reliance upon the actions of the police in providing personal protection.

*Id.* at 1315 (citations omitted).

In this case, Plaintiff makes the following allegation:

There was a direct and continuing contact between the Plaintiff and the police sergeant an [sic] other officers who came to the scene after Defendant Moore's first assault on Plaintiff and Plaintiff justifiably relied on the sergeant and other offers [sic] on the scene to protect Plaintiff from further assaults from Defendant Moore as they had been placed on notice of Defendant Moore's assault on Plaintiff. The sergeant had been specifically sent to the seen [sic] to protect plaintiff and investigate the assault because of the Plaintiff's 911 call advising that Defendant Moore had assaulted him. The Defendant' [sic] sent a sergeant and other officers to the scene as affirmative action on the part of police to protect Plaintiff from further assaults from Defendant Moore. The police created an ongoing, continuous contact with Plaintiff prior to the second assault on Plaintiff by Defendant Moore. Plaintiff relied on the actions of the police to provide personal protection from further assaults by Defendant Moore. The officers on the scene affirmatively acted to create a special relationship with the Plaintiff. The police officers [sic] conduct were [sic] committed by person [sic] acting under color of state law which deprived Plaintiff of his rights, privileges and immunities secured by the Constitution of the united [sic] States. The deliberate actions of the police are attributed to the District of Columbia as its customs and practices are the moving force behind Plaintiff's deprivation of federal rights.

Am. Comp. ¶ 53. Plaintiff also contends that the District "failed to train the officers involved and failed to supervisee [sic] them." Am. Compl. ¶ 94. Despite Plaintiff's repeated use of the various terms of art, the actual facts pled by Plaintiff are not sufficient to create a special relationship for two reasons: (1) the mere act of seeking police protection does not overcome the public duty doctrine, and (2) Plaintiff's own allegations establish that the officers took steps to protect Plaintiff, Plaintiff was never physically

assaulted once the other officers were on the scene (only yelled at), and the officers ultimately arrested Defendant Moore.

Plaintiff's action in seeking police protection cannot in and of itself establish a special relationship.  "[T]he mere fact that an individual has emerged from the general public and become an object of the special attention of public employees does not create a relationship which imposes a special legal duty."  *Hines v. District of Columbia,* 580 A.2d 133, 136 (D.C. 1990); *see also Powell v. District of Columbia,* 602 A.2d 1123, 1130-31 (D.C. 1992) ("mere contacts are insufficient in the absence of evidence of a special duty arising as a result.").

More specifically, it is well-settled that Plaintiff's 911 call is insufficient to establish a special relationship.  *Wanzer v. District of Columbia,* 580 A.2d 127, 132 (D.C. 1990) (citing *Morgan,* 468 A.2d at 1313).  The call and the alleged response to the call led to the police responding to the scene, just as the police would in response to any person's call for service.  *See Wanzer,* 580 A.2d at 132 (describing 911 call as "no different from the hundreds of other calls received every day by the EMS.  [The caller] neither asked for, nor would he in all likelihood have received, a response different in any way from the response generally made to such requests, *i.e.,* the dispatch of an ambulance.").  Indeed, "[e]ven a series of contacts over a period of time between a public agency and an injured or endangered person is not enough to establish a special relationship, absent some showing that the agency assumed a greater duty to that person than the duty owed to the public at large."  *Wanzer,* 580 A.2d at 132 (citing *Morgan,* 468 A.2d at 1316).  Plaintiff has alleged no facts from which such a higher duty or "special relationship" could be inferred.

If anything, Plaintiff's alleged contact with police during a call for service is far less than that in *Warren,* where no special relationship was found. In that case, two women in a rooming house called the police for assistance in connection with a burglary in progress on a lower floor of the building. *Warren,* 444 A.2d at 2. While the caller was assured that the police were on their way, the dispatcher categorized the code as a lower priority and did not broadcast the incident as a crime as in progress. *Id.* Although four squad cars responded, the officers all soon left the scene when no one responded to their knock on the door. *Id.* Hearing their neighbor's continued cries for help, the women again called 911 and were again assured that help was on its way. *Id.* This time, the dispatcher coded the call as an "investigate the trouble" and did not dispatch it to officers. *Id.* The women, believing that officers may have come into the building, called out reassurances to the neighbor. *Id.* The intruders were then alerted to the presence of the other two women and took them captive as well and held all three for fourteen hours, during which time they were the victims of a series of violent sexual assaults. *Id.* On these facts, the court concluded that notwithstanding the calls to 911 and the assurances by the dispatcher, there was no special relationship between the victims and the police. *Id.* at 4.

Although Plaintiff claims (as did the Plaintiffs in *Warren*) that he justifiably relied on the presence of the police officers, Plaintiff has not pled facts that support a reasonable inference that there was a special duty to the Plaintiff. *See Hines,* 580 A.2d at 139 ("without a special duty there can be no justifiable reliance."). If the failure to prevent multiple sexual assaults over a period of hours when the police have been notified does not overcome the public-duty doctrine, then a brief alleged failure to prevent one

14

individual from yelling at another does not.  Indeed, Plaintiff's claim is a textbook example of the importance of the public-duty doctrine and the havoc that would ensue if the public could use lawsuits to micromanage the way the District's officers have performed their duty to the public.  Accordingly, Plaintiff's Amended Complaint still fails to allege facts sufficient to overcome the public duty doctrine and therefore fails to state a claim of liability against the District of Columbia.

### 2.  Plaintiff Has Failed to State a Claim Against the District Under the District of Columbia Human Rights Act

Plaintiff has alleged that the District has somehow violated the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq*., because of his protected status as a nightclub security employee.  Am. Compl. ¶¶ 68-73, 85-90.  As demonstrated below, Plaintiff has failed to state any cognizable claim under the DCHRA.

The stated purpose of the DCHRA is to:

> secure an end in the District of Columbia to discrimination for any reason other than that of individual merit, including, but not limited to, discrimination by reason of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities, matriculation, political affiliation, genetic information, disability, source of income, status as a victim of an intrafamily offense, and place of residence or business.

D.C. Code § 2-1401.01.  The DCHRA sets forth specific provisions prohibiting acts of discrimination in employment (§ 2-1402.11 – § 2-1402.13); housing and commercial spaces (§ 2-1402.21 - § 2-1402.24); public accommodations (§ 2-1402.31); educational institutions (§ 2-1402.41 - § 2-1402.42); as well as other miscellaneous and prohibited practices (§ 2-1402.61 - § 2-1402.73).

Plaintiff attempts to state a claim under the District of Columbia Human Rights Act ("DCHRA") with the following allegations:

> Plaintiff is a member of a protected class because of his source of income (night club security). Plaintiff suffered discrimination as he was treated differently by Defendants than individuals outside his protected class. As a result of Defendants' actions Plaintiff was denied the ability to participate fully in the economic, cultural and intellectual life of the District of Columbia and to have an equal opportunity to participate in all aspects of life and denied the ability to enjoy equal treatment by the District of Columbia employees.

Am. Compl. ¶ 4. Plaintiff also cites generally to D.C. Code § 2-1402.01. Am. Compl. ¶ 68. This section provides as follows:

> Every individual shall have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including but not limited to, in employment, in places of public accommodation, resort or amusement, in educational institutions, in public service, and in housing and commercial space accommodations.

D.C. Code § 2-1402.01.

Generally, to state a claim under the DCHRA, Plaintiff must allege that (1) he is a member of a protected class, (2) that he suffered some kind of adverse treatment or action, and (3) that a causal connection existed between the first and second elements. *See Everson v. Medlantic Healthcare Group*, 414 F. Supp. 2d 77, 82 (D.D.C. 2006) (reciting elements in an age-discrimination context); *Beckwith v. Career Blazers Learning Ctr.*, 946 F. Supp. 1035, 1050 (D.D.C. 1996) (reciting elements within an employment-discrimination context) (citing *Lempres v. CBS Inc.*, 916 F. Supp. 15, 21 (D.D.C. 1996)). This framework is the direct result of the District's adoption and adaptation of the Supreme Court's Title VII analytic framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 11 (D.D.C. 2001) (citing *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1553 (D.C. Cir. 1997)).

Plaintiff claims that he is a member of the "source of income" protected class because of his status as a "night club security" employee. Am. Compl. ¶ 4. Even assuming the dubious proposition that "night club security" employees could under some circumstances constitute a protected class, Plaintiff has failed to state a claim as he has not pled any facts to show that he sustained adverse treatment as that term is defined in the statute or that there was any causal connection between the alleged protected class status and the alleged adverse treatment.

To state a claim under the DCHRA Plaintiff must plead that he suffered some adverse treatment by Defendant that is specified in the Act. *See Everson*, 414 F. Supp. 2d at 82. Sections 2-1402.11 - § 2.1402.42 and § 2-1402.61 - § 2-1402.73 provide an extensive list of acts that, if pled, would satisfy this requirement. D.C. Code § 1402.11 *et seq.* Plaintiff has pled none of these, and instead cites to the general prohibitions of § 2-1402.01, Am. Compl. ¶¶ 66-67, 83-84. Consequently, Plaintiff's claim must therefore be dismissed for this reason alone. *See Gersman v. Group Health Ass'n,* 931 F.2d 1565, 1574 (D.C. Cir. 1991) (noting that "the District of Columbia courts have declined to extend their interpretation of [a previous version] of the statute outside the scope of the enumerated protected activities") ([vacated and remanded on other grounds by 502 U.S. 1068 (1992)]).

Plaintiff asserts that Defendant failed in a duty it owed to Plaintiff when it "refus[ed] to take action against Defendant Moore and treat[ed] Plaintiff as if he had broken the law." Am. Compl. ¶ 88. As an initial matter, Plaintiff immediately contradicts this general and conclusory assertion by his own specific factual statements that multiple officers intervened, including one who ordered Defendant Moore to stand

down and another who handcuffed and arrested her.  Am. Compl. ¶¶ 45-49.  These acts clearly demonstrate that action was taken against Defendant Moore.  At the same time, there are no facts alleged that explain or support Plaintiff's claim that he was treated as if he had broken the law.

Additionally, to state a DCHRA claim Plaintiff must show a causal link between protected class membership and the alleged discrimination.  *See Everson*, 414 F. Supp. 2d at 82.  The DCHRA is an anti-discrimination statute.  Plaintiff must show that he was treated differently *because of* his source of income.  Plaintiff makes no such allegation, even in conclusory fashion, and any such allegation under the facts as alleged would be absurd.  Instead, Plaintiff claims only that "Plaintiff suffered discrimination as he was treated differently by Defendants than individuals outside his protected class."  Am. Compl. ¶ 4.  This is not the same thing; Plaintiff must allege that the adverse treatment resulted from discrimination against him based on the fact that he earned his income as a night club security officer.[3]  Because Plaintiff does not and could not legitimately make such an allegation (and because he fails to allege adverse treatment meeting the statutory requirements), this claim cannot survive a motion to dismiss.  *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C. Cir. 1987).

Plaintiff asserts that an officer told him (after an inquiry from Plaintiff on the subject) that he would have been arrested for assault on a police officer if he had retaliated against Defendant Moore physically.  Am. Compl. ¶ 36.  Plaintiff does not assert, however, that the same thing would not have happened to anyone who assaults a police officer.  Regardless, he did not retaliate, he was not arrested, and any hypothetical

---

[3] By way of illustration, Plaintiff is not alleging that the District denied him employment or public benefits because he was a night club security employee.

retaliation would not have been at all related to his membership in his protected class.

Thus, Plaintiff has failed to establish the second and third elements of his discrimination

claim, and has established the first only if "night club security employee" is a protected

class.

### 3. Plaintiff Has Failed to State a Claim Under 42 U.S.C. § 1983 Against the District of Columbia

Plaintiff alleges that "Defendants deprived Plaintiff of his civil rights and utilized

excessive force against Plaintiff.  Said deprivation was the result of Defendant's custom

and/or policy, which was the moving force behind said deprivation."  Am. Compl. ¶ 61.

Plaintiff then states that, "[i]n refusing to take action against Defendant Moore and

treating Plaintiff as if he had broken the law, Defendants caused Plaintiff to be denied his

rights secured by the provisions of the due process clause of the Fifth and Fourteenth

Amendments to the Constitution of the United States, and by Title 42 United States Code

Section 1983."  Am. Compl. ¶¶ 64, 81.  Plaintiff further alleges that "Defendant Moore

was the servant, agent, and employee of her codefendant, the District of Columbia, so

that his [sic] acts are imputed to the District of Columbia."  Am. Compl. ¶ 66, 83.

Additionally, Plaintiff states:

> Defendants [sic] custom and/or policy caused the deprivation of Plaintiff's
> civil rights and Defendants' [sic] utilized excessive force against Plaintiff.
> Defendant Moore had identified herself as a police officer, she had already
> spit on Plaintiff, other police officers on the seen [sic] had put [sic] on
> notice about the Defendant's assault on Plaintiff and Plaintiff's fear that
> Defendant would assault him.  Defendant Moore was again allowed by the
> officers on the seen [sic] to come within inches of Plaintiff Moore's
> cursing and yelling at Plaintiff which put Plaintiff in reasonable
> apprehension of imminent bodily injury and was undertaken deliberately
> and with actual malice by Defendant Moore.

Am. Compl. ¶ 78.

In attempting to state a claim for municipal liability against the District, Plaintiff's allegations as set forth above are deficient in numerous ways.[4]  As an initial matter, the notion that an employee's acts can impute liability on the municipality was long ago rejected by the United States Supreme Court.  *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 691 (1978); *see also Triplett v. District of Columbia,* 108 F.3d 1450, 1453 (D.C. Cir. 1997).  Rather:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983."

*Monell,* 436 U.S. at 694.

Further, the facts alleged by Plaintiff are inconsistent and would, in any event not support a finding of a constitutional violation by the municipality.  To state such a claim, Plaintiff must allege conduct committed by a person acting under color of state law that deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[5]  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).  Plaintiff's burden is significant; he must plead that "*deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights."  *Board of County*

---

[4] Among Plaintiff's unavailing claims is his assertion of violation of his rights under the Fourteenth Amendment.  It is well-settled that the Fourteenth Amendment does not apply to the District of Columbia.  The Due Process Clause of the Fourteenth Amendment states, in pertinent part, "No State shall . . . deprive any person of life, liberty, or property without due process of law . . . ."  "Thus, by its terms, the Fourteenth Amendment applies only to the States; it does not apply to the Federal Government or the District of Columbia."  *Powers-Bunce v. District of Columbia,* 479 F. Supp. 2d 146, 153 (D.D.C. 2007), citing *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543 n.21 (1987); *see also Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) (holding that the Fourteenth Amendment does not apply to the District of Columbia).  Second, Plaintiff's assertion of violation of rights protected by 42 U.S.C. § 1983 fails to state a claim.  This statute does not in and of itself create any "rights" that can be violated; rather, it is merely the vehicle to redress the alleged violation of rights created by other federal laws.  *See Albright v. Oliver,* 510 U.S. 266, 271 (1994); *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).

[5] Further, as discussed in Section A, Defendant Moore's actions were personal in nature and not in the scope of her employment with MPD.  As such, there is no government action "under color of state law" that would make Section 1983 applicable to this incident.

*Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694)

(emphasis in original).  "A showing of simple or even heightened negligence will not

suffice" to establish municipal liability for constitutional torts.  *Brown*, 520 U.S. at 407.

Plaintiff must also show "an existing unconstitutional municipal policy . . . attributed to a

municipal policymaker . . . [p]roof of a single incident of unconstitutional activity is not

sufficient to impose liability under *Monell*."  *City of Oklahoma City v. Tuttle*, 471 U.S.

808, 820 (1985).

Here, Plaintiff recites that "Defendants . . . utilized excessive force against

Plaintiff," and that this "was the result of Defendant's custom or policy, which was the

moving force behind said deprivation."  Am. Compl. ¶ 61.  However, the only physical

contact that Plaintiff has alleged is the allegation that Defendant Moore spit on him.

Plaintiff does not claim that any of the on-duty officers used any force against him.

Additionally, while Plaintiff has asserted the buzzwords of "custom and/or

policy," he has not defined the custom or policy of the District that he is alleging.  As

other judges of this Court have noted, the allegation of a custom or policy is the "first

element of municipal liability" and it "is not nearly as simple to define as it is to recite."

*Cox v. District of Columbia,* 821 F. Supp. 1, 11 (D.D.C. 1993), *aff'd*  40 F.3d 475 (D.C.

Cir. 1994).  The *Cox* Court further observed that "[t]he first task is, of course, to identify

and define the particular policy or custom at issue; only then can the more difficult

question of whether such a policy or custom existed be addressed."  *Id.*  Here, Plaintiff

has failed to allege the first element, and thus has not satisfied the notice pleading

requirements.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination

Unit,* 507 U.S. 163 (1993).  Plaintiff has also not alleged a policymaker to whom the

alleged unconstitutional actions are attributable.  The failure to allege these essential elements of a municipal liability claim are fatal to Plaintiff's cause of action against the District.

Moreover, Plaintiff appears to be basing his theory of liability for constitutional violation on this single incident.  "Where the policy itself is not unconstitutional, considerably more proof than [a] single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."  *City of Oklahoma v. Tuttle,* 471 U.S. 808, 824 (1985).

Finally, just a Plaintiff must allege that the actions at issue fell within the officer's scope of employment to establish common law tort liability, to state a Section 1983 claim, Plaintiff must allege that the asserted violation of his constitutional rights was under color of state law.  *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978).  "Just because [Defendant Moore] is a police officer does not mean that everything [she] does is state action."  *Gritchen v. Collier,* 254 F.3d 807, 812-813 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996)) (actions by officer assaulting and attempting to rob victims were the officer's private actions and were not under color of law); *Pitchell v. Callan,* 13 F.3d 545, 548 (2d. Cir. 1994) (officer's shooting of acquaintance was action outside of the officer's police powers); *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990) ("Acts committed by a police officer even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties.") (citation omitted); *Bonsignore v. City of New York,* 683 F.2d 635, 638-39 (2d Cir. 1982) (officer outside the scope of his

employment when he shot his wife); *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981) (police chief's assault on citizen at police headquarters was not under color of law); *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir. 1975) ("Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983.") (citation omitted). Here, as explained *supra* at Section III.A., the actions of Defendant Moore cannot form the basis for municipal liability against the District as they were not performed under color of state law.

With respect to the actions of the other officers, Plaintiff again does not allege a constitutional violation. At most, he alleges that he was yelled at by another in their presence. Further, the Supreme Court in *DeShaney v. Winnebago County Dep't of Social Services*, 479 U.S. 189 (1989), held that a due process violation can arise only from an affirmative act and not a failure to act:

> [N]othing in the language of the Due Process Clause itself requires the State to protect life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee or certain minimal levels of safety and security….

> Consistent with these principles, our cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual….

> If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*DeShaney*, 489 U.S. at 195-97 (internal citations omitted). The Circuit Courts, including the District of Columbia Circuit Court, have applied the *DeShaney* teachings in cases

23

alleging a constitutional violation for failure to protect.  In *Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001), the D.C. Circuit Court noted that:

> a key requirement for constitutional liability is affirmative conduct by the State to increase or create the danger that results in harm to the individual. No constitutional liability exists where the State actors "had no hand in creating a danger but [simply] 'stood by and did nothing when suspicious circumstances dictated a more active role for them.'" …  Absent such affirmative conduct by the State to endanger an individual, courts have rejected liability under a State endangerment concept.

*Butera*, 235 F.3d at 650 (quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993) (quoting *DeShaney*, 489 U.S. at 203)); *see also Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) ("failure to act is not an affirmative act under the state-created danger theory"); *Hernandez v. City of Goshen*, 324 F.3d 535, 539 (7th Cir. 2003) (city not liable for failure to take action, where police department learned that disgruntled employee threatened to do bodily harm to employees at plant and that he had access to guns); *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003) (city not liable for failure to protect plaintiff; "[plaintiff] confuses the inert failure to protect with the proactive creation or exacerbation of danger").  Because no constitutional violation occurred as a result of the alleged failure to protect, because the failure to protect cannot provide a basis for liability under Section 1983, and because Plaintiff does not identify a policy or policymaker that caused the failure to protect, this claim should be dismissed.

## IV.    CONCLUSION

For the reasons set forth above, the District respectfully requests that this matter be dismissed against it.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

__/s/  Samuel C. Kaplan_____
SAMUEL C. KAPLAN (463350)
Assistant Deputy Attorney General

___/s/  Shana L. Frost_____
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax:  (202) 727-3625
shana.frost@dc.gov